IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

THOMAS JOHN HEILMAN,

    Plaintiff,

v.

N. FRY, et al.,

    Defendants.

NO. CV-08-2478-JLQ

SCREENING ORDER

Plaintiff, a state prisoner, housed at all relevant times at the California State Prison in Solano, California ("CSP-Solano"), initiated this action by filing a pro se civil rights Complaint under 42 U.S.C. § 1983 against various state employees.

## I. Screening Standards

Under the Prison Litigation Reform Act of 1995, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity, officer, or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b)(1),(2) and 1915(e)(2); *See Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998).

ORDER - 1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court must, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989); *Franklin*, 745 F.2d at 1227.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusion are not. *Id.* at 1949. The court must construe the pleading in the light most favorable to Plaintiff and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

ORDER - 2

42 U.S.C. § 1983.

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

**II. DISCUSSION**

**A. The Complaint**

Plaintiff's Complaint is a 29-page narrative alleging violations of the Eighth Amendment and Fourteenth Amendment. The court has liberally construed the allegations in Plaintiff's Complaint to set forth numerous alleged violations of his constitutional rights. The California Department of Corrections and Rehabilitation ("CDCR") evaluates inmates to determine whether an inmate meets criteria for inclusion in a mental health treatment population, and if so, which level of care he or she should receive. Plaintiff was placed on the "EOP" or "Enhanced Outpatient Program"[1] level of

---

1   "The EOP level of care is for inmates who suffer 'Acute Onset or Significant Decompensation of a serious mental disorder characterized by increased delusional thinking, hallucinatory experiences, marked changes in affect, and vegetative signs with definitive impairment of reality testing and/or judgment,' and who are unable to function in the general prison population but do not require twenty-four hour nursing

ORDER - 3

1  care on December 14, 2005. Plaintiff claims that the CDCR failed to provide him with
2  adequate mental health and medical care. Plaintiff also alleges the Defendants Fry and
3  Wiley inflicted cruel and unusual punishment by refusing to transfer him to a EOP
4  designated facility for a higher level of care within 60 days of his enrollment in the EOP.
5  Plaintiff states he had to wait seven months for the transfer.

6  Plaintiff asserts he had a constitutional right not to be placed in dormitory style
7  housing with general population inmates because of his status as an EOP inmate. He
8  states the dormitory style living caused him tremendous paranoia and anxiety and
9  aggravated his mental illness to the point of his eventual placement in the Crisis Center
10 and on suicide watch. When Plaintiff refused his housing assignments on multiple
11 occasions, he claims CDCR officials verbally attacked and punished him by bumping
12 him off the transfer list and placing him in a small, wire holding cage, and then also in
13 administrative segregation. Plaintiff claims prison officials pressured and attempted to
14 intimidate him into "accepting dormitory housing." He alleges that Defendants Johns
15 and Fry purposely downplayed his mental health instability and care level.

16 He asserts that on on April 24, 2006 he was brutally attacked by general
17 population inmates because of his EOP status. He claims that during the attack,
18 Defendants Olivo and Barnett deliberately sprayed him in the face with pepper spray,
19 and then he was refused the opportunity to decontaminate until hours later when he
20 nearly blacked out and then only permitted to sit in front of a fan. Finally, he alleges
21 "the Defendants and CDCR" ignored his EOP level of care and violated the Fourteenth
22 Amendment when they wrote him up for rules violation "as a punitive measure when
23 Plaintiff refused to house" with general population inmates.

24 In addition to monetary relief, Plaintiff seeks injunctive monetary relief to prohibit
25 the CDCR from placing him in dormitory housing in the future while he is their custody.

26 _____

27 care or inpatient hospitalization." *Coleman v. Schwarzenegger*, 2009 WL 2340820, *15
28 n24 (E.D.Cal, Aug. 4, 2009)(citations omitted).

ORDER - 4

**B.  Claims for Relief**

**1. "*Coleman*" claims**

Plaintiff's primary claim in this action is that as a participant in the EOP Level of Care, his constitutional rights were violated when 1) officials ignored the threat to his safety and mental health when housed with general population inmates either in dormitory housing or in administrative segregation; and 2) prison officials failed to expedite his transfer out of CSP-Solano to an "EOP designated facility." He claims more broadly that as a result, the CDCR has failed to render adequate mental health care.  As Plaintiff himself recognizes in the Complaint, these circumstances stem from the "tailspin" that the California correctional system is in.  Unfortunately, Plaintiff is just one of thousands of California inmates having experienced unmet mental health needs. The court can take judicial notice that California prisons are overcrowded and California prisoners have as a result been denied constitutionally adequate mental health care.  This dire situation in California is comprehensively outlined in the recent 183-page decision and prisoner release order of the three-judge district court panel in *Coleman v. Schwarzenegger*, 2009 WL 2340820 (E.D.Cal, Aug. 4, 2009).  The panel's decision identifies extreme overcrowding as the primary cause of the CDCR's failure to deliver constitutionally adequate mental health care in their prison system.  "The crushing inmate population has strained already severely limited space resources to the breaking point, and crowding is causing an increasing demand for medical and mental health care services, a demand with which defendants are simply unable to keep pace." *Coleman*, 2009 WL 2340820, * 61.

Plaintiff claims that his constitutional rights and guarantees should not be allowed to be usurped because of prison overcrowding or lack of bed space.  Plaintiff's claims and the fourteen-year old *Coleman* class action litigation both pertain to the constitutionality of the adequacy of mental health care in California.  The class in *Coleman* is comprised of mentally ill inmates incarcerated in California prisons alleging that prison officials are depriving them of constitutionally required mental health care.

ORDER - 5

More precisely, the class includes "all inmates with serious mental disorders who are now or who will in the future be confined within the California Department of Corrections..." *See Coleman v. Wilson*, 912 F.Supp. 1282, 1293 (E.D.Cal.1995). Because Plaintiff would qualify for membership in the *Coleman* class, he may not maintain a separate individual suit involving the same subject matter and must bring all claims for injunctive or equitable relief through the class representative until the class action is over. *See Crawford v. Bell*, 599 F.2d 890, 892-93 (9th Cir.1979); *see also McNeil v. Guthrie*, 945 F.2d 1163, 1165 (10th Cir.1991) ("Individual suits for injunctive and equitable relief from alleged unconstitutional prison conditions cannot be brought where there is an existing class action."); *Gillespie v. Crawford*, 858 F.2d 1101, 1103 (5th Cir.1988) (en banc) ("To allow individual suits would interfere with the orderly administration of the class action and risk inconsistent adjudications."). Plaintiff can not maintain his own lawsuit to attempt to enforce the numerous orders entered in the pending *Coleman* litigation. Accordingly, Plaintiff's claims regarding his housing assignments and the adequacy of mental health care are dismissed.

**2. Eighth Amendment - Cruel & Unusual Punishment**

Plaintiff claims that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (*quoting Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", *Id. (quoting Wilson*, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal

ORDER - 6

civilized measure of life's necessities". *Id. (quoting Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. *Id. (quoting Wilson*, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". *Id*. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The Eighth Amendment requires prison officials to provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986).

**a. Excessive Force**

The Eighth Amendment prohibits those who operate prisons from using "excessive physical force against inmates." *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In cases involving the alleged use of excessive force, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id*. (*quoting Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

Even liberally construed, Plaintiff can not state a claim for excessive use of force against the officers who used pepper spray to break up the fight. Plaintiff describes the fight as one in which he was thrown to the ground and "fought for his life." Ct. Rec. 1 at 17. The Defendant officers allegedly sprayed the aggressor inmates as well as Plaintiff in the face, head and mouth, while Plaintiff was on the ground. Ct. Rec. 1 at 18. Though Plaintiff may not have instigated the fight, courts have consistently held that using pepper spray is reasonable to break up a fight among inmates. Plaintiff admits he was

ORDER - 7

in a fight and none of the facts alleged suggest the use of force was any more than was necessary to quell the fighting inmates in order to restore discipline.  As Plaintiff has presented no allegations from which to conclude the officials used the pepper spray "maliciously and sadistically for the very purpose of causing harm," Plaintiff fails to state a cognizable legal claim for excessive force.

**b. Deliberate Indifference to Serious Medical Needs**

Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need ." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1991). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin*, 974 F.2d at 1059 ( quoting *Estelle*, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id* . at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  Failing to treat a prisoner's pain can violate the Eighth Amendment.

If a prisoner establishes the existence of a serious medical need, he or she must then show that prison officials responded to the serious medical need with deliberate indifference. *Farmer*, 511 U.S. at 834. Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. "However, the officials' conduct must constitute ' " 'unnecessary and wanton infliction of pain' " ' before it violates the Eighth Amendment. *Hallett v. Morgan,* 296 F.3d 732, 745 (2002) *quoting Estelle*, 429 U.S. at 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (*quoting Gregg v.*

ORDER - 8

*Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)); *see also Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir.1998).

### i. Prolonged Failure to Permit Decontamination

Plaintiff alleges that after having been sprayed with pepper spray in the face to break up a fight, he suffered with the lingering burning effects of the spray. He claims he had difficulty breathing and that "[m]edical staff was indifferent to his pain and suffering and at the time CSP-Solano had no decontamination booth to rinse off the spray." Ct. Rec. 1 at 19. He claims that after being seen at the infirmary, he was immediately placed in a holding cage, and not allowed to shower or to do anything to counteract the burning effects, until "hours" later when he nearly blacked out, and so he was permitted to sit in front of a fan. Ct. Rec. 1 at 19.

Ordinarily pepper spray does not create a serious medical need because it causes only temporary discomfort. However, due to the effects of prolonged exposure, the failure of prison officials to decontaminate an inmate following the use of pepper spray may support a claim for under Section 1983 for deliberate indifference to the inmate's serious medical needs. *Clement v. Gomez*, 298 F.3d 898, 904-06 (9th Cir. 2002). Plaintiff could state a cognizable claim for intentionally refusing to allow him to decontaminate until hours later. *Clement*, 298 F.3d at 904-06. However, Plaintiff's claim is meaningless and incomprehensible unless he is able to identify those persons allegedly responsible for the violation of his constitutional rights. Plaintiff merely alleges that "medical staff" and "custody staff" were deliberately indifferent to his medical needs. While Plaintiff's pleadings are subject to less stringent standards than those submitted by attorneys, Plaintiff must provide sufficient information to enable the court and his opponents to know who he is trying to identify. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 390 n. 2, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (in which "the District Court ordered that the complaint be served upon 'those federal agents who it is indicated by the records of the United States Attorney participated in the November 25, 1965, arrest of the petitioner' "), and

ORDER - 9

*Wakefield v. Thompson*, 177 F.3d 1160, 1162 n. 4 (9th Cir. 1999) (although the plaintiff did not know the name of the officer who refused to provide the plaintiff's prescription when releasing plaintiff on parole, the plaintiff informed the Court that the name could be secured "by inspecting the 'parole papers that the plaintiff signed at the time of his release' and the 'Duty Roster for that day.' ").

Plaintiff will be permitted the opportunity to amend his claim for deliberate indifference to identify (either by name or other identification such as "John Doe nurse treating me on April 24, 2006") so that it can be understood which named Defendants were aware of his condition and allegedly inflicted unnecessary and wanton pain.

ii.   Injuries from April 24, 2006

Plaintiff claims that as a result of the fight on April 24, 2006, he suffered from numerous cuts and abrasions, a swollen eye, a cracked rear molar, a broken little finger, nerve damage, and a muscle sprain in his left wrist and arm. Ct. Rec. 1 at 17. He claims his injuries were never "properly diagnosed or treated" until after he was transferred to another facility. *Id*. Plaintiff has not alleged acts or omissions sufficiently harmful to evidence deliberate indifference on the part of any named Defendant to serious medical needs. Accordingly, he fails to state claim for deliberate indifference based upon these injuries sustained as a result of the fight on April 24, 2006.

iii.   Denial of Medication

Plaintiff claims while housed in the dormitory he made verbal and written requests for medication to help him "deal with the anxiety, depression and paranoia" while he was awaiting transfer. He claims that "due to a foul-up" he never received the medication prescribed for him. Plaintiff's claims in regard to the denial of medication are too vague and conclusory to state a cognizable claim for relief. It is unclear what the "foul up" was and whether any of the Defendants had any personal involvement in this claim. Plaintiff's allegations, without more, fail to allege any Defendant was "deliberately indifferent" to Plaintiff's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th

ORDER - 10

Cir.1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Plaintiff will be permitted the opportunity to amend this claim to cure the deficiencies identified.

**c. Conspiracy**

To the extent that plaintiff intends to allege a conspiracy against some or all of the Defendants, Plaintiff's allegations fail to state a claim.  Plaintiff must specifically allege the facts supporting his claim and tie those facts to each defendant against whom he alleges conspiracy. A conspiracy claim brought under § 1983 requires proof of "an agreement or 'meeting of the minds' to violate constitutional rights," *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir.2002), *quoting United Steel Workers of Amer. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir.), cert. denied, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989) (citation omitted), as well as an "actual deprivation of constitutional rights resulting from the alleged conspiracy." *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir.2006), *quoting Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1126 (9th Cir.1989). " 'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.' " *Franklin*, *supra*, 312 F.3d at 441, *quoting United Steel Workers, supra*, 865 F.2d at 1541.

**d.  Verbal Harassment**

Plaintiff provides no specific facts, but complains that CDCR officials verbally attacked him and placed him into administrative segregation in order to intimidate and "convince" him to accept his housing assignments with general population inmates.  It is well settled that verbal harassment of a prisoner, although deplorable, does not violate the Eighth Amendment.  *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir.2004); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir.1996).

**2. Fourteenth Amendment**

Plaintiff claims that his due process rights were violated when he was issued several disciplinary infractions for refusing to house with a general population inmates

ORDER - 11

and therein the CDCR "disguised Plaintiff's true Mental Health EOP Level of Care." Ct. Rec. 1 at 22.  The failure to properly denote Plaintiff's level of care on the disciplinary infraction was corrected and the infraction modified to reflect his EOP status.  Ct. Rec. 23 at 1; Ct. Rec. 23, Ex "H".  These allegations do not rise to the level of a constitutional violation.   Plaintiff admits he refused his cell assignment, which is an infractable offense.  Disobedience is not the method an inmate should utilize to seek to alleviate grievances. Moreover, Plaintiff's grievance regarding his level of care was addressed during the administrative appeal process.

**V. Leave to Amend**

For the foregoing reason, Plaintiff's Complaint will be dismissed for failure to state a claim upon which relief may be granted and because the remainder of his claims involve the same subject matter presented in class action, *Coleman v. Schwarzenegger*, No. Civ S-90-0520 LKK JFM (E.D. Cal).

When deficiencies in the complaint exist, a *pro* se litigant must be given an opportunity to amend his complaint unless it is absolutely clear that the deficiencies could not be cured by amendment.  *See Lopez v. Smith,* 203 F.3d 1122, 1128 (9th Cir. 2000) (en banc).  Of Plaintiff's claims, the only ones which he might be able to proceed upon if cured by amendment are his medical treatment claims based upon 1) the alleged prolonged failure to permit decontamination after being pepper sprayed; and 2) and the denial of medication.

By **November 3, 2009**, Plaintiff may submit an Amended Complaint on the form provided with this Order.  If Plaintiff fails to use the form provided with this Order, the court may strike the Amended Complaint and dismiss the action without further notice to Plaintiff.

The Amended Complaint shall:

1. be legibly rewritten or retyped in its entirety;
2. be an original and not a copy and may not incorporate any part of the original complaint by reference;

ORDER - 12

3.  be a single document;
4.  be clearly labeled "First Amended Complaint" and cause number CV-08-2478-JLQ must be written in the caption. The First Amended Complaint supercedes any prior complaint, *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir.1997), and must be "complete in itself without reference to the prior or superseded pleading," E.D. Cal. R. 15-220;
5.  contain a section titled: **Defendants**. This section shall identify all the defendants who caused the alleged deprivation of Plaintiff's constitutional rights. Plaintiff shall not name those Defendants whom the court herein has terminated because the alleged facts involving these Defendants do not provide a basis for viable constitutional claims. If Plaintiff names individuals, he shall identify that he is suing these individuals "in their individual capacity";
6.  contain a section titled: **Facts**. This section shall set forth the facts that comprise Plaintiff's cause of action, i.e., identify the event and what each individual Defendant did with specificity and the date thereof. <u>Each factual allegation shall be set forth in separate, numbered paragraphs</u>;
7.  contain a section titled: **Claims**. Plaintiff is required to divide the lawsuit into separate counts. In each count, Plaintiff must identify what federal constitutional or statutory civil right was violated, how it was violated, and state which Defendants violated that right.
8.  contain a section titled: **Prayer for Relief**. This section shall set forth what relief Plaintiff seeks; and
9.  include all factual allegations and claims against each of the Defendants against whom the case is going forward. Because the Amended Complaint will become the <u>sole complaint</u> in the action, it is the only complaint which will be served on the parties.

Plaintiff's First Amended Complaint must also comply with both the Federal Rules

ORDER - 13

of Civil Procedure and the Local Rules for the Eastern District of California. *See King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987) (finding that *pro se* litigants must follow the same rules of procedure that govern other litigants). As a courtesy, the Clerk's Office will send Plaintiff a copy of the Local Rules.

By signing an Amended Complaint Plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations. For violation of this rule the court may impose sanctions sufficient to deter repetition by Plaintiff or others. Fed.R.Civ.P. 11.

Plaintiff is further admonished that by signing an Amended Complaint he certifies his claims are warranted by existing law, including the law that he completely exhaust administrative remedies, for violation of this rule plaintiff risks dismissal of his <u>entire</u> action.

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir.1992) (holding a district court may dismiss an action for failure to comply with a court order).

**IT IS HEREBY ORDERED:**

1. The Complaint is **DISMISSED** for failure to state a claim and because some of the claims are the same pending before the district court in *Coleman v. Schwarzenegger*. Plaintiff has until **NOVEMBER 3, 2009** to file an amended complaint in compliance with this Order.

///
///
///
///
///
///

ORDER - 14

///

2. If Plaintiff fails to file an amended complaint by November 3, 2009, the Court will, without further notice, enter a judgment of dismissal of this action with prejudice.

3. The Clerk of the Court must include with this Order a copy of a court-approved form for filing a civil rights complaint by a prisoner.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and provide a copy to Plaintiff.

Dated October 2, 2009.

                s/ Justin L. Quackenbush
                JUSTIN L. QUACKENBUSH
        SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 15